### GOTTLIEBA PZOLLA v. MICHIGAN CENTRAL R. R. CO.

*Railway injury to person crossing track.*

The wife of a man who was employed by a railroad company in taking her husband his dinner, had occasion to cross half a dozen busy tracks that lay side by side. In stepping out from behind some cars that stood on one of the tracks she was struck and injured by an engine on the next track, that was backing down in front of her and across her path. *Held*, that whether or not the railway company was negligent in running the engine at a prohibited rate of speed or in failing to ring its bell, the woman was not exercising ordinary care and could not recover for the injury to which she had contributed by her own negligence.

Error to the Superior Court of Detroit. (Chipman, J.) June 11.—June 25.

CASE. Plaintiff brings error. Affirmed.

*Babcock & Thompson* for appellant. The fact that one in attempting to cross a railroad does not, at the instant of stepping on it, look to ascertain if a train is approaching, is not conclusive evidence of a due want of care on his part, and more particularly if by the omission of customary signals plaintiff has been lulled into a feeling of security: *Plummer v. Eastern R. R. Co.* 73 Me. 591; *Hart v. Erie Ry. Co.* 3 Alb. L. J. 312; *Detroit & Milwaukee R. R. Co. v. Van Steinburg* 17 Mich. 123; *Kellogg v. R. R. Co.* 79 N. Y. 72; *Chaffee v. B. & L. R. R.* 104 Mass. 108; *Kennayde v. Pacific R. R.* 45 Mo. 255.

*Henry Russel* for appellee, cited the following cases of contributory negligence: *Cauley v. P. C. & St. L. R. R.* 2 Am. & Eng. R. R. Cas. 4; *N. C. Ry. v. State* 6 id. 66; 54 Md. 113; *Col. Central R. R. v. Holmes* 8 id. 410: 5 Col. 197; *I. & G. N. Ry. Co. v. Jordan* (Texas) 10 id. 301; *Terre Haute & I. R. R. v. Graham* (Ind.) 12 id. 77; *B. & O. R. R. v. Depew* (Ohio) id. 64; *Yarnall v. St. Louis &c. R. R.* 75 Mo. 575: 10 Am. & Eng, R. R. Cas. 726; *McClaren v. Ind. & V. Ry.* (Ind.) 8 id. 217.

CHAMPLIN, J.  This action was brought to recover damages for personal injuries received by plaintiff in attempting to cross defendant's railroad, and while so doing being run against by defendant's engine. It appears from the plaintiff's testimony that on the 18th day of July, 1883, she was injured by defendant's engine while crossing the company's track from the slaughter-house of Hammond & Standish, near the Twentieth-street crossing. At this point defendant's tracks run nearly east and west.  There were six tracks which passed the point where plaintiff was injured, and a track leading to an ice-house 225 feet west of Twentieth street.  The other six tracks are thus described : Commencing on the south the first track is called No. 1; the next are called the south and north main tracks; north of these the tracks are numbered 1, 2, and 3. The main tracks were used for all passenger trains and freight business, and for the general working tracks to get in and out of the yard.  At that time defendants ran in and out over the main tracks about sixty passenger trains daily, and an equal number of passenger trains for light business, and also about eighteen switch-engines constantly running in and out. The yard was being used at that time by the Michigan Central main line; the Detroit, Lansing & Northern; the Grand Trunk; the Flint & Pere Marquette; the Detroit & Bay City; and the Canada Southern Railroads. At the Twentieth street crossing defendant had a flagman, and sign-boards on the corner, containing the words: "No thoroughfare. The public are warned against walking on these tracks." Engines going east into the city for a train would run backward, and switch-engines running one way would go backward, and the other way forward.

The plaintiff was sworn as a witness in her own behalf, and testified that her husband was employed by the defendant on the north side of the tracks described above, and that she had been accustomed to carrying her husband's dinner to him, and in doing so she went up by the slaughter-house, west, and then went across the tracks to the company's yards north of the railroad, between Twentieth and Foundry streets; that her husband had been employed by defendant for three months; that she always went the same way; that she was standing upon the south side of the track upon which the engine was running when she was struck; that there were cars ahead of her, and before she stepped out from behind these cars she stopped and looked and listened, but did not see or hear anything; that she could not see up the track far on account of the cars. On cross-examination she testified that she did not know but she guessed she saw a sign painted in English on the corner of Twentieth street, forbidding people to go on the tracks; that she knew that alongside of the slaughter-house there were railroad tracks and cars and engines running nearly all the time; that she always stood there and looked around so as not to be struck by them; and when she walked on the track she was always afraid; that she was not walking on the tracks but between the tracks when she was struck; that she did not know how far she had walked when she was struck. On re-direct examination she testified as follows:

"When I went west up the tracks from Hammond & Standish's towards the ice-house I walked on the second track, and I was struck after I had turned to go across the tracks where my husband was working."

On re-cross examination plaintiff testified:

*Question.* In the place where you were hit by the engine, could not you see down the track a quarter of a mile, clear free?

*Answer.* I could not see on account of the cars which stood there.

*Q.* After you came out from behind the cars, could you not see a quarter of a mile, or were you struck so soon that you could not see at all?

*A.* I got struck right away.

*Q.* Before you could look at all?

*A.* When I came from in rear of the cars I got struck.

*Q.* After you stepped from behind the cars where you could not see out on the other track, you never stopped to look at all, but walked right along the track?

*A.* Yes; I got struck right away.

*Q.* You were not between the rails at the time you were struck, but was close on the south side?

*A.* I was on the side. I was struck on the right side. Before I turned to go across the tracks I looked to see whether I could see anything or hear the bell."

A witness for plaintiff, by the name of Thomas Wiemer, was standing on the top of a car next to the ice-house; he saw an engine running down on the south main track, and he estimated the speed at which it was going at about twelve or fourteen miles an hour, and stated there was no bell ringing, to his knowledge. He did not see the accident and does not know that the engine he saw was the one that struck the woman, and at the time it passed he did not hear any exclamation or see any commotion about the place; that about an hour after, he saw the plaintiff sitting in the watchman's shanty at the corner of Twentieth street, and saw that she was badly injured; that there was a switch-engine and cars on track No. 1, between him and the south main track, on which that engine was running

Walter Smith was working with the last witness on the refrigerator car at the ice-house, and saw the engine coming down the south main track, and in his judgment it was coming fourteen miles an hour. He did not hear the bell ring, and thinks he would have heard it had it been ringing. He saw the woman after she was hurt; did not see the accident, but heard a woman had been struck.

It is conceded that plaintiff was seriously and permanently injured. The plaintiff's testimony also showed that, on account of a curve in the track to the west of where the accident happened, a person emerging from behind cars on track No. 1 on the south side of the main track, could see but a short distance in that direction.

The foregoing comprises substantially all the testimony relating to the manner in which the accident happened. It

appears very plain that the plaintiff, by her own negligence, contributed to the injury. She voluntarily went into a place of great danger, of which she was fully aware. She says she was hit upon the right shoulder as she attempted to cross from the south to the north side of the tracks by an engine backing from the west, along the south main track. If this was so she must have been facing the engine at the time, and must have seen it approaching unless she was guilty of the utmost heedlessness. Yet she says she did not see the engine coming. It appears from her statement that she stepped from behind the car on track No. 1 directly in front of the passing engine, or so near to it as to be struck by it. It does not help the plaintiff's case to show that she was rightfully on the defendant's grounds, or that defendant was guilty of negligence in not ringing the engine bell, or in running at a rate of speed prohibited by ordinance, if the plaintiff's negligence contributed to the injury. It was incumbent upon the plaintiff not only to show that the defendant was negligent but that she was in the exercise of ordinary care. The testimony is conclusive against the plaintiff that she was not in the exercise of ordinary care.

It follows that the judge of the Superior Court committed no error in directing a verdict for defendant,

And the judgment is affirmed.

The other Justices concurred.