## John S. Nevius v. The Bank of Lansingburgh.

The guaranty of a promissory note, naming no one as the promissee, becomes .fixed whenever any one takes it upon the guarantor's credit.

And where one sues upon such a guaranty, the presumption that he is the promissee, arising from possession of the instrument, will prevail in his favor, at least until rebutted by showing that the guaranty had previously been operative in other hands.

A witness called to prove the dishonor of a note, who only testifies that he went to find the maker's last place of residence, and that the note was not paid, and he then protested it, but does not testify concerning his knowledge of the residence, nor whether, if no personal demand was made, there was any valid reason for the omission, does not sufficiently show the dishonor.

Notice of the dishonor of commercial paper, deposited for. delivery in the post office where the person to whom it is directed receives his letters, is sufficient unless such person resides within the place; in which case the service must be personal, or left at the place of abode or business.

It is the duty of post masters to deliver letters deposited for delivery at the same office.

Where notice of dishonor is deposited in the post office where the endorser resides, proof that he received it the second day after the dishonor, is not sufficient to charge him.

*Heard November 1st. Decided November 18th.*

Error to Kent Circuit. The facts are fully stated in the opinion.

*J. W. Champlin* and *J. P. Whittemore*, for plaintiff in error:

Where suit is brought upon a guaranty which names no promissee, it is necessary for plaintiff to aver and prove that the contract of guaranty was made with him: —1 *Greenl. Ev.* § 60. Such contracts are not negotiable: —1 *Pars. on Cont.* 493; 3 *Mich.* 188.

There was no sufficient proof of. the dishonor of the other note:—*Edw. on Bills*, 485, 488–9; 3 *McCord*, 394.

Depositing notice in the post office was not sufficient service upon Nevius:— *Newberry v. Trowbridge*, 4 *Mich.* 395, *and cases cited.* Nor is proof that it came to his hands sufficient, unless it appears that he received it the day succeeding the dishonor:—*Edw. on Bills*, 615; *Ibid.* 602–3;

2 *Campb.* 208; 3 *C. & P.* 250; 1 *Stark.* 314; *Story on Bills*, § 289; 2 *Greenl. Ev.* § 288; 5 *Met.* 215, 352.

*C. I. Walker*, for defendant in error:

The guaranty must be presumed to have been made to the plaintiff, who holds it. And as the Court found that a proper demand was made at the maker's last place of residence, no question of law arises on that point.

The notice of dishonor was sufficient.

The weight of American authority is doubtless in favor of the proposition, that, where the holder resides in the same place with the indorser, evidence that the note was deposited in the post office would not be sufficient to charge the indorser. The reason given, seems to be, that letters are sent to the post office for transmission by mail, and not for deposit and delivery:—2 *Hill*, 588. Now this reason is not a true one, for a very important part of the duties of post offices, especially in large places, is the delivery of " drop " letters, and the law has provided for the postage on such letters. The presumption, too, in favor of the reception of drop letters, is just as great as in the case of letters transmitted by mail.

The rule " has lost its reasonable force, and exists only by authority," and is so encumbered by exceptions, that it ought not to be retained:—1 *Am. Lead. Cas.* 403.

But this case is not within the rule. 1st. It does not appear who held the note at the time it fell due. 2d. The note was payable and demanded, not in Grand Rapids, but at Gaines. 3d. Nevius did not reside in Grand Rapids, but two miles therefrom. If the party, to whom the notice is sent, lives out of town, but comes to the post office of that town for his letters, a notice deposited in the post office, directed to him, is good:—1 *Pet.* 578; 2 *Rich.* 338; 2 *Pet.* 542; 1 *Met. (Ky.)* 652; 8 *W. & S.* 14; 5 *Blackf.* 447; 7 *Ibid.* 457, 460; *Ibid.* 610; 3 *Kelly*, 486;

4 *Ala.* 148, 158; 1 *Har. & J.* 423; 3 *Ohio*, 307, 320; 28 *Mo.* 331.

There are various other cases in which a notice is good to charge an indorser, although deposited in the post office where he resides and where it is addressed:— 5 *Md.* 213; 3 *Conn.* 489, 486; 8 *Fost.* 313; 15 *Md.* 293.

But we submit, that even if the rule laid down in *Newberry v. Trowbridge* is to be adhered to, and this case is held to come within it (which we deny), the finding of the Court that the indorser received the notice of protest two days after the protest, is sufficient to charge him:—8 *Fost.* 313; 3 *McLean*, 96; 5 *Ala.* 376; 15 *Md.* 291. This was received within a reasonable time as found by the Court.

CAMPBELL J.:

In this case plaintiff in error was sued below on a guaranty of a negotiable note which had been endorsed to him, and also as endorser of another note; and judgment was rendered against him on both.

The guaranty was upon a note which was endorsed by the payee to him without recourse, and was in these words: "For value received I hereby guaranty the payment of the balance due on the within note. J. S. Nevius." It was objected that this was not shown to be a contract made with the plaintiff below, but the objection was overruled. We think there was no error in the decision. This promise is general in its form, and is like that in *Thomas v. Dodge*, 8 *Mich.* 51, except that the guaranty there was of collection and not of payment. We there held the want of a person named in the contract of guaranty as promissee was no objection to the validity of the contract. The contract in the present case becomes fixed whenever any one takes it upon the guarantor's credit; and without determining between the conflicting decisions in our reports upon the negotiability of such paper, we are satisfied

that a presumption arises from possession, which will prevail in favor of the holder, at least until rebutted by showing that it had previously been operative in other hands.

The plaintiff in error was held liable as endorser of another note; and the questions presented on that note arise out of an alleged want of proof that the proper steps had been taken to charge him as such. The person who had charge of the note, which was made by one Jacob Clark, testified upon this point as follows: "At the time it became due I went down to the township of Gaines, to find Jacob Clark's last place of residence; the note was not paid; after which I protested it." There is no further proof concerning demand or refusal to pay, but the witness testifies that on the next day he deposited a proper notice of dishonor in the post office at Grand Rapids, directed to Nevius at Grand Rapids, and that subsequently Nevius admitted that he received the notice two days thereafter. It was in evidence that Grand Rapids was his nearest post office, and that he lived two miles from the post office; but it did not appear whether his residence was within or without the city. Nevius asked the Court to exclude the note because there was no sufficient proof of dishonor and notice; but the Court held the proof sufficient.

We think there was no legal proof of the dishonor of the note. Tryon, the witness, does not state whether he found Clark or not; or whether he made any demand. He does not testify concerning Clark's residence or his knowledge of it, nor whether, if no personal demand was made, there was any valid reason for the omission. The case is also defective upon service of notice. It does not appear that Nevius did not reside in Grand Rapids, and if he did he was entitled to personal service or service at his residence or place of business. Had the proof shown that he resided out of the city we think the service would have been regular. The sufficiency of service

upon facts shown is a question of law; and any rule which leaves it indefinite must always leave parties in doubt concerning their legal rights and liabilities. It is doubtless as easy to serve a notice personally a little beyond a city line as within it; but if any extension is made requiring service beyond, the law must determine how far beyond such service is required, and for this we have no rule furnished. Any rule adopted must be in some respects an arbitrary one, and we think the established one is the safest. We are aware that in *Newberry v. Trowbridge,* 4 *Mich.* 391, upon a supposition that the post office laws imposed no duty to deliver any letters except those transmitted by mail, it was held service could not be made by depositing a letter in the office which was not to be sent to another office. This being a question of United States law, we think the decision in the case of the *Bank of Columbia v. Laurence,* 1 *Pet.* 578, sufficiently declared that such a use of the post office is lawful. Provision was made for postage on drop letters as early as 1825 (*Act of 3d March,* 1825, § 36), and now postage is required to be prepaid. There can be no doubt of the duty of postmasters to deliver such letters. And as regards the question of convenience, such a method is entirely reasonable. A person is more likely to receive a drop-letter than one transmitted to him from a distance, because he escapes the risks of the road.

It was claimed in this case that, inasmuch as the notice was actually received, all further proof was unnecessary. But the proof did not show it to have been received the day after the dishonor of the note; and the case must stand upon the sufficiency of the delivery through the post office.

The judgment must be reversed, with costs, and a new trial must be ordered.

The other Justices concurred.