BRITTON v. MICHIGAN CENTRAL RAILROAD CO.

1. RAILROAD CROSSINGS — CARE IN APPROACHING — PLEADING AND PROOF — VARIANCE.

Where plaintiff, who had alleged in his declaration that, as he approached a railroad crossing, he slowed his horse down to a very slow walk, and looked and listened for trains, and that he continued so to do until he was struck by a train, which he had been unable to see because of obstructions,—was given leave to amend his declaration so as to cover testimony that he stopped his horse, leaned forward, and looked out at the side of his closed carriage, and refused so to amend, the admission of the testimony was reversible error.

2. SAME — SIGNALS — CONFLICTING EVIDENCE — WHAT CONSTITUTES.

The testimony of the occupants of a closed carriage, struck by a train at a railroad crossing, that, although they stopped two rods from the track, and listened, they heard no crossing signals, does not rise to the dignity of evidence, so as to take the question to the jury, where all the members of the train

crew, and a bystander, an entirely disinterested witness,
testify positively that the signals were given, and state the
reasons for their recollection.

3. SAME—LOOKING AND LISTENING—CONTRIBUTORY NEGLIGENCE.
    The duty of one about to cross a railroad track, to look and
    listen for approaching trains, is not discharged by stopping
    his horse 30 feet from the track, and looking and listening,
    but he should look and listen for the entire distance; and
    where one, after so stopping, rode the 30 feet in a closed car-
    riage, paying no heed to the light cast upon the track by the
    headlight of an engine, for the reason that he thought it the
    reflection of an electric lamp located 400 feet away, he was
    guilty of contributory negligence, precluding a recovery for
    injuries caused by the train's striking him at the crossing.

Error to Shiawassee; Smith, J. Submitted October 6,
1899. Decided December 21, 1899.

Case by Martinus S. Britton against the Michigan Cen-
tral Railroad Company for personal injuries caused by a
collision with defendant's train at a highway crossing.
From a judgment for plaintiff, defendant brings error.
Reversed.

*R. A. Montgomery*, for appellant.

*Watson & Chapman*, for appellee.

LONG, J. 1. It is a common and just rule of pleading
that the plaintiff must stand upon the averments in his
declaration. He cannot allege one case of negligence,
and prove another. He cannot be permitted to show a
state of facts entirely different from that charged in the
declaration. Plaintiff averred that, as he approached the
crossing,—

"He looked and listened for an approaching train,
slowed his horse down to a very slow walk, and continued
to look and listen for an approaching train as he neared
the point where said railway crossed Chipman street, at
which time it was so dark that said plaintiff could not see;
that his view was obstructed by the line of freight cars
above mentioned; * * * and he began so listening
when he was within about 20 rods of said crossing, and

continued to so listen until he was struck by said train on said crossing, and he did not hear any train approaching said crossing; but, just as the horse and part of the buggy in which he was riding got upon said crossing, they were struck by said train."

Upon the trial plaintiff testified that he and his companion stopped the horse, leaned forward, and looked out at the side of their inclosed carriage. This was objected to upon the ground that it was directly contrary to the facts set up in the declaration. The court evidently was at first inclined to so hold, and gave plaintiff permission to amend his declaration. This was refused, and the court admitted the testimony. I think this was error for which the judgment should be reversed.

2. I think the plaintiff did not make out a case of negligence on the part of the defendant. The engineer, fireman, conductor, brakeman, and baggageman all swear positively that the crossing signals were given, and state the reasons for their recollection. In addition to this, an entirely disinterested witness, a merchant, testified that he stood in front of his store, about 200 feet south of the crossing, saw the horse and buggy come along, heard the train come, heard the whistle blow, and watched the parties until they were struck at the crossing. The only testimony opposed to this is that of the plaintiff and his companion, who were riding in this inclosed carriage, who stopped about two rods from the side track — not the main track — for about a quarter to a half minute. They were not at all certain how far they were from the track. A strenuous effort was made on the part of the plaintiff's attorneys to locate them as near the track as possible when they stopped. They immediately started up, and went from there to the track in this inclosed carriage. I do not think this testimony rises to the dignity of evidence, in the face of six witnesses in a position to know, who swear positively that the signals were given.

3. I think the plaintiff was guilty of contributory negligence. He knew he was approaching a dangerous place, where the train was at any time liable to cross. He rode

at least 30 feet, and probably more, without taking any steps to ascertain if a train was approaching. In a second he could have thrown back the top of his carriage, which would have given him and his companion a clear and unobstructed view. He saw a light shining upon the track, and thought it was the light of an electric lamp located about 400 feet away. It was, in fact, from the headlight of the engine. It is also worthy of note that eight witnesses, some of whom had no connection whatever with the railroad, and therefore had no interest, and were unimpeached, testified that the plaintiff said, shortly after the accident, that he saw the train and heard the signals, but thought he had time to get across. Plaintiff admits that, if he had stopped again within a rod of the track, he would undoubtedly have seen the reflection of the light and heard the train. Considering the situation, the darkness of the night, the liability of trains to approach at any moment, it was his duty to keep on the alert from the time he knew he was approaching the track, which he testifies they did when within about four rods, until they reached the track. Does the law justify a party in riding a distance of 30 feet or more from a railroad track without availing himself of the means at his disposal to look and listen? Has he performed his duty by once stopping and looking and listening? According to plaintiff's own testimony, while he was riding these two rods the train would go sixteen rods. Clearly, his duty was to look and listen for the entire distance, and he might have done so, without any inconvenience to himself, by simply pulling the braces of the top of his buggy, and letting it back. *Phillips* v. *Railway Co.*, 111 Mich. 274 (66 Am. St. Rep. 392). In my judgment, he was guilty of contributory negligence.

The judgment must be reversed, and a new trial ordered.

GRANT, C. J., and HOOKER, J., concurred with LONG, J. MOORE, J., concurred in the result. MONTGOMERY, J., did not sit.